UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                                        :
YUN SHI LI,                                                             :
                                                                        :
                              Plaintiff,                                :
                                                                        :
                                                                        :        21-cv-10601 (LJL)
              -v-                                                        :
                                                                        :        OPINION AND ORDER
MERRICK B. GARLAND, Attorney                                            :
General of the United States; UR M.                                     :
JADDOU, Director of United States                                       :
Citizenship and Immigration Services;                                  :
ALEJANDRO MAYORKAS, Secretary                                          :
of the US Department of Homeland                                        :
Security; PHYLLIS COVEN, Director                                       :
for the District of New York United                                     :
States Citizenship & Immigration                                       :
Services; SUSAN QUINTANA, Director                                     :
for Field Office of New York,                                           :
                                                                        :
                              Defendants.                               :
                                                                        :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Plaintiff Yun Shi Li ("Plaintiff[1]" or "Li") brings this action (1) seeking *de novo* review of

the denial by United States Citizenship and Immigration Service ("USCIS") of her application

for naturalization under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1421(c) and

(2) to set aside USCIS's denial of Plaintiff's application for naturalization on grounds that

USCIS's decision was arbitrary and capricious under the Administrative Procedure Act ("APA").

        Defendants Merrick B. Garland, Attorney General of the United States; Ur M. Jaddou,

Director, USCIS; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security;

---

[1] Li styled herself as a "Plaintiff" and the government parties as "Defendants" in her Complaint.
The Court adheres to that convention throughout this opinion.

Denise M. Frazier,[2] District Director, USCIS New York District Office; Susan Quintana, Field

Office Director, USCIS New York Field Office (collectively, "Defendants") now move to

dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

for relief.  Dkt. No. 13.

       For the following reasons, the motion to dismiss is granted.

## BACKGROUND

### A.     Family-Based Visas and the Child Status Protection Act

       The Immigration and Nationality Act allows United States citizens and legal permanent

residents ("LPRs") to sponsor certain family members for visas.  8 U.S.C. § 1151(a), (b).

Immediate relatives of U.S. citizens are not subject to yearly visa caps, *see id.*

§ 1151(b)(2)(A)(i); more distant relatives of U.S. citizens and certain relatives of LPRs are

allocated visas based on their "preference" category, *see id.* § 1153(a)(1)–(4).  There are several

preference categories for family-sponsored immigrants:  First preference ("F1") is reserved for

unmarried sons and daughters of citizens; second preference is subdivided into "F2A" (spouses

and children younger than twenty-one of LPRs) and "F2B" (unmarried children over the age of

twenty-one of LPRs) categories; third preference ("F3") is reserved for married children of

citizens; and fourth preference ("F4") is for siblings of citizens.  *See id.* 1153(a)(1)–(4).[3]  The

law caps the number of visas that can be issued annually in each preference category.  *See id.*

§§ 1151(c)(1)(A), 1153(a)(1)–(4).

---

[2] Denise M. Frazier is automatically substituted for Phyllis A. Coven.  *See* Fed. R. Civ. P. 25(d).
[3] "Child" is defined in part as "an unmarried person under twenty-one years of age."  8 U.S.C.
§ 1101(b)(1),

Before a relative can receive a visa, the sponsoring U.S. citizen or LPR (the "petitioner" as he or she is known) must file a Form I-130, Petition for Alien Relative ("Form I-130 Petition") on behalf of a family member (the "beneficiary"). *Id.* § 1154(a)(1)(A)(I); 8 C.F.R. § 204.1(a)(1); *Li v. Renaud*, 654 F.3d 376, 378 (2d Cir. 2011). Once the claimed familial relationship is verified, USCIS approves the petition. *See Drax v. Reno*, 338 F.3d 98, 114 (2d Cir. 2003). Approval of a Form I-130 Petition by USCIS does not automatically bestow a visa on the beneficiary; rather, the beneficiary receives a "priority date"—the date on with the Form I-130 Petition was filed—and, if there are more approved beneficiaries than visas available, as there generally are for those who fall into one of the four preference categories, the beneficiary must wait until his or her priority date is called. *See* 8 C.F.R. § 204.1(b); *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 48 (2014) (plurality opinion); *Cuthill v. Blinken*, 990 F.3d 272, 274–275 (2d Cir. 2021). "The system is thus first-come, first-served within each preference category, with visas becoming available in order of priority date." *Scialabba*, 573 U.S. at 48.

Petitioners can name one or more derivative beneficiaries on the same Form I-130. *See Li v. Renaud*, 709 F. Supp. 2d 230, 232 (S.D.N.Y. 2010), *aff'd*, 654 F.3d 376. These "derivative beneficiar[ies]," including the spouse and minor children of the principal beneficiary, are entitled to "the same status, and the same order of consideration," regardless of whether the parent or child would separately qualify for a visa through one of the family preference categories. 8 U.S.C. § 1153(d), (h); *Scialabba*, 573 U.S. at 48.

"All of this takes time—and often a lot of it." *Scialabba*, 573 U.S. at 50; *see also Renaud*, 654 F.3d at 378 ("Given the annual limitations on the total number of visas that may be granted for a particular family preference category—and on the number of natives of a single country who may receive visas—the waiting line to receive a visa often is long."). It takes time

for USCIS to approve a Form I-130 Petition; it frequently takes even more time for a visa to become available after a Form I-130 Petition is approved; and it takes time for USCIS to approve a visa once one becomes available. *Scialabba*, 573 U.S. at 50. So Congress enacted the Child Status Protection Act ("CSPA"), 116 Stat. 927, to protect both primary and derivative children from aging out of a preference category (i.e., turning twenty-one) while waiting. *Scialabba*, 573 U.S. at 51; *see* 8 U.S.C. § 1153(h). The CSPA carves out two periods of time from the statutory age of primary and derivative beneficiaries: the time spent waiting for USCIS to approve the Form I-130 Petition and the time spent waiting for the USCIS to approve a beneficiary's visa, after one has become available. *See* 8 U.S.C. § 1153(h)(1), (2); *Scialabba*, 573 U.S. at 52–53. Statutory time, however, does not stop during the period after the relevant Form I-130 Petition has been approved but before a visa has become available. If the beneficiary ages out of the preference category during this period, the CSPA provides that "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3).

The question of if and how this subsection applied to derivative beneficiaries whose petition could not "automatically be converted" into a second family-preference category was settled by the Board of Immigration Appeals ("BIA") in *Matter of Wang*, 25 I. & N. Dec. 28 (2009). Before *Matter of Wang*, the BIA had addressed the issue in a single, unpublished opinion. In *Matter of Garcia*, the BIA concluded that, under the CSPA, aged-out derivative beneficiaries could inherit a primary beneficiary's priority date. *See Matter of Garcia*, 2006 WL 2183654, at *4 (DCBABR June 16, 2006). There, the respondent was the derivative beneficiary on her mother's F4 From I-130 Petition, which was filed by her mother's U.S.-citizen sibling. *Id.* at *1. But the respondent had aged out of her mother's F4 Petition and her mother filed an F2

petition on her behalf. *Id.* at *2. With scant reasoning, the BIA concluded that under the CSPA, "the respondent is entitled to retain the January 13, 1983, priority date that applied to the original fourth-preference petition." *Id.* at *4.

But in *Matter of Wang*, the BIA declined to follow this unpublished decision. 25 I. & N. Dec. at 33 n.7. In *Matter of Wang*, a U.S. citizen filed an F4 Form I-130 Petition on behalf of her brother. *Id.* at 29. Wang's wife and three children were derivative beneficiaries of the F4 Petition for which Wang was the primary beneficiary. *Id.* While waiting for a visa to become available, Wang's daughter turned twenty-two. *Id.* As a result, Wang's daughter was no longer eligible to be a derivative beneficiary on the F4 Petition filed by her aunt. After he received a visa based on his sister's Form I-130 Petition and became an LPR, Wang then filed a new F2 Petition on behalf of his daughter. *Id.* at 29–30. He argued that under the CSPA, his daughter's petition should receive the same priority date as the F4 Petition filed by his sister on his behalf. *Id.* The BIA rejected this argument and instead held that the priority date retention provisions of the CSPA do not apply because "there was no available category to which the beneficiary's petition could convert . . . [as] the niece of a United States citizen." *Id.* at 38–39. Although the daughter might have been entitled to the priority date on the petition filed by her aunt had she been the aunt's daughter and aged-out of category F2A to F2B, because the original petition sought a visa once the daughter aged out as a derivative beneficiary on the original F4 Petition, there was no category pursuant to which she would be entitled to be a beneficiary on a petition filed by her aunt. Though Wang's daughter could now qualify for an F2 visa through her relationship with her father, she was not entitled to a visa by virtue of her relationship with her aunt and she could not inherit the priority date her father was given based on the original

petition.  She, in essence, could not skip the line and was entitled only to the priority date on the Form I-130 Petition her father filed on her behalf.

The Supreme Court upheld the BIA's interpretation of the CSPA in *Scialabba v. Cuellar de Osorio*, 573 U.S. 41.  Justice Kagan, in her plurality opinion on behalf of herself and two other Justices, upheld the BIA's interpretation of 8 U.S.C. § 1153(h)(3) in *Matter of Wang* on *Chevron* grounds.  *See id.* at 56–64.  Justice Kagan found § 1153(h)(3) was ambiguous because its first clause—"If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d)"—appeared to encompass all aged-out beneficiaries and thus pointed to broad-based relief, while its second clause—"the alien's petition shall automatically be converted to the appropriate category"—on its face applied to only a subset of beneficiaries.  *Id.*

Justice Kagan concluded that the BIA's interpretation of the statute was reasonable.  *Id.* at 57.  Her conclusion was based on the plain language of the provision as well as on what she considered to be "the family preference system's core premise."  *Id.* at 60.  The reference to "automatic conversion" in the second clause was to a term commonly used in migration law to "authorized changes [that] could occur without any change in the petitioner's identity, or otherwise in the petition's content."  *Id.* at 59.  As historically used, "the [term] 'automatic conversion' entailed nothing more than picking up the petition from one category and dropping it into another for which the alien now qualified."  *Id.*; *see also id.* at 60 (noting that the word "conversion" used elsewhere in the CSPA referred to "a recategorization—moving the same petition, filed by the same petitioner, from one preference classification to another, so as to reflect a change in either the alien's or his sponsor's status"); *id.* at 66 ("the 'automatic conversion' language—as most naturally read and as long used throughout immigration law—

6

contemplates moving a petition into a new and valid category, not changing its most essential feature"). The BIA's narrower interpretation of "automatic conversion" also accorded with "the family preference system's insistence that a qualified and willing sponsor back every immigrant visa." *Id.* at 61. A rule that would permit the derivative beneficiary to carry forward and continue to use the priority date of the original petition, necessarily depended on the premise there would be "a new petitioner for the old one, to make sure the aged-out alien's petition fi[t] into a new preference category." *Id.* But there might be many circumstances in which there was no qualified and willing new sponsor; the father who would otherwise have been qualified might have "decided in the end not to immigrate, or failed to pass border inspection, or died in the meanwhile." *Id.* He might lack "adequate proof of parentage or [have] committed a disqualified crime" or he might not want to or be able to "undertake the significant financial obligations that the law imposes on someone petitioning for an alien's admission." *Id.* In such situations, a new petition is required to determine whether a new, viable sponsor exists. *Id.* Finally, the plurality also emphasized the administrative challenges posed by a rule other than that in *Matter of Wang*: "a new qualified sponsor will hardly *ever* exist at the moment the petition is to be 'converted.'" *Id.* (emphasis in original). Conversion would "require[e] special intervention, purposeful delay, and deviation from standard administrative practice. Conversion [would] become not a machine that would go of itself, but a process painstakingly managed." *Id.* at 68. By contrast, under the rule in *Matter of Wang*, "conversion entails a simple reslotting of an original petition into a now-appropriate category." *Id.* at 62.

At the same time, however, Justice Kagan concluded that the BIA's interpretation in *Matter of Wang* was not the only interpretation the statute could be given. As the plurality stated, "[W]e hold only that § 1153(h)(3) permits—not that it requires—the Board's decision to

so distinguish among aged-out beneficiaries." *Id.* at 64.  In the process, Justice Kagan suggested that a BIA interpretation of the CSPA that applied § 1153(h)(3) broadly—as it did in *Matter of Garcia*—would have also been reasonable:

> [T]he ambiguity those ill-fitting clauses create instead left the Board with a choice—essentially of how to reconcile the statute's different commands.  The Board, recognizing the need to make that call, opted to abide by the inherent limits of § 1153(h)(3)'s remedial clause, rather than go beyond those limits so as to match the sweep of the section's initial condition.

*Id.*; *see also id.* at 57 ("That internal tension makes possible alternative reasonable constructions, bringing into correspondence in one way or another the section's different parts.").

Chief Justice Roberts, in a concurring opinion joined by Justice Scalia, agreed that the BIA's interpretation of the statute was reasonable.  *Id.* at 78 (Roberts, C.J. concurring).  But he disagreed about what made § 1153(h)(3) ambiguous.  *Id.*  Chief Justice Roberts rejected Justice Kagan's argument that the ambiguity in the provision could be found in the tension between the two clauses and their scope of potential relief because the only benefit provided by § 1153(h)(3) stems from the operative (second) clause.  *Id.* at 77–78.  Rather, Chief Justice Roberts found ambiguity in the term "automatic conversion," which requires "at minimum" that the beneficiary have an eligible independent sponsor, and concluded "it was reasonable . . . for the Board to interpret section 1153(h)(3) to provide relief only to a child who was a principal or derivative beneficiary of an F2A petition."  *Id.* at 78–79.  As the Chief Justice noted: "Congress did not speak clearly to which petitions can 'automatically be converted.'"  *Id.* at 79.  In the process, Chief Justice Roberts may have suggested that the BIA's decision in *Matter of Garcia* would have been reasonable; in *Matter of Garcia*, the aged-out beneficiary had an independent sponsor, her mother who had since become an LPR, and thus she satisfied the "minimum" requirements identified by Chief Justice Roberts for automatic conversion.

B.      **Factual and Procedural Background**

The following facts are accepted as true for purposes of this motion only.

Plaintiff was born on May 30, 1985 in the People's Republic of China.  Complaint

("Compl."), Dkt. No. 1 ¶ 14; *id.* Ex. C; *id.* Ex. G at ECF p. 28.  On February 13, 1997, Li's

paternal aunt filed a Form I-130 Petition on behalf of Li's father.  *Id.* ¶ 16.  Li was under the age

of twenty-one and thus qualified as a derivative beneficiary on the Form I-130 Petition filed on

behalf of her father.  *See id.* ¶ 17.  But a visa only became available for Li's father in June 2008,

after Li had turned twenty-one.[4]  *See id.* ¶ 18.  Thus, measured as of that moment, Li no longer

qualified as a derivative beneficiary.  Li's father became an LPR and filed a new Form I-130

Petition, seeking to classify Li as F2B (an unmarried child of a permanent resident over the age

of twenty-one).  *Id.* ¶¶ 19, 70; *id.* Ex. E.  The application was filed by Li's father on September

16, 2008, *id.* Ex. F at 2, received by USCIS on September 30, 2008, *id.* Ex. E, before *Matter of*

*Wang* was decided, and approved on February 10, 2010, *id.* Ex. E, after the BIA handed down

*Matter of Wang*.  *See also id.* ¶ 49.  The priority date listed on the Form I-130 Petition filed by

Li's father was the same as her father's priority date, February 13, 1997.  *Id.* ¶ 63; *id.* Ex. E.

In May 2010, Li was issued a visa by the United States Department of State.  *Id.* Ex. J.

The visa was premised on Li's classification as F2A (spouses and children (unmarried and under

twenty-one years old) of lawful permanent residents) and a priority date of February 13, 1997.

*Id.* ¶ 69; *id.* Ex. J.  Li was admitted to the United States as a permanent resident on November 2,

2010 and has lived in the United States since then.  *Id.* ¶¶ 37, 71; *id.* Ex. D.

Li filed a Form N-400, Application for Naturalization ("Form N-400"), which USCIS

received on October 29, 2015.  At the time of her citizenship application, Li had lived in the

---

[4] Li was roughly twenty-three years old at the time a visa became available for Li's father.  The
Complaint does not allege that Li's statutory age was younger than twenty-one.

United States for at least 4.75 years, the minimum residency requirements to submit a citizenship application.  *See* 8 U.S.C. § 1445 ("[T]he application for naturalization may be filed up to 3 months before the date the applicant would first otherwise meet such continuous residence requirement[, *i.e.*, five years of continuous residence].").  Li's Form N-400 was approved on January 25, 2016 after Li appeared for an interview.  *Id.* ¶ 23; *id*. Ex. F at 2.  At that point, Li faced several remaining requirements to become a naturalized citizen, including, *inter alia*, (i) residing in the United States until admission to citizenship, 8 U.S.C. § 1427(a), 8 C.F.R. § 316.2(a), (ii) passing a background check, 8 U.S.C. § 1446(a), 8 C.F.R. §§ 316.10, 335.1, (iii) passing an English proficiency and U.S. history and government test, 8 U.S.C. § 1423(a), 8 C.F.R. §§ 312.1, 312.2, and (iv) taking an oath of allegiance to the United States, 8 U.S.C. § 1448(a); 8 C.F.R. § 337.1.  *See Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 289–290 (2d Cir. 2009).

On February 16, 2016, however, USCIS moved to reopen Li's application after determining that Li had "not met all requirements for naturalization."  *Id.* ¶ 24; *id.* Ex. F at 2.  In a decision dated March 22, 2016, USCIS District Director Phyllis A. Coven determined that Li did not meet all the requirements for naturalization.  Specifically, USCIS determined that Li was admitted under both the wrong classification and priority date when her Form I-130 Petition was approved and thus was not "lawfully admitted for permanent residence" as required for naturalization.  *Id.* Ex. F at 1–2.  First, USCIS argued Li was not entitled to the priority date of the Form I-130 Petition filed by her aunt on behalf of her father.  *Id.* at 2.  USCIS also argued that Li was not under the age of twenty-one and thus should have been classified as F2B.  *Id.*  As USCIS explained:

> On the date that you became a lawful permanent resident, you were admitted in the wrong classification and a visa was not available to you in the correct classification

of unmarried son or daughter of a lawful permanent resident. Additionally, you were not eligible for the retention of your father's priority date as it does not apply to an alien who ages out of eligibility for an immigrant visa as the derivative beneficiary of a fourth preference visa petition, and on whose behalf a second preference petition is later filed by a different petitioner. *See Matter of Wang*, 25 I & N Dec. 28 (BIA 2009).

Since a visa was not available to you, you were not lawfully admitted for permanent residence.

*Id.* Ex. F at 2 (cleaned up); *id.* ¶¶ 25–27.

Li retained new counsel and filed a new Form N-400 on April 25, 2019, arguing that she was entitled to the February 13, 1997 priority date. *Id.* ¶ 28; *id.* Ex. G at 3, Ex. H. On February 28, 2020, USCIS again denied Li's application for naturalization after determining the Li was "not a lawful permanent resident." *Id.* ¶ 30; *id.* Ex. B at 2. Because Li was "erroneously classified at the time of entry on November 2, 2010 [under an FX2 classification]," she was "unable to be classified as a child under the Child Status Protection Act and w[as thus] not lawfully admitted as a permanent resident," USCIS concluded that Li was "ineligible for naturalization." *Id.* Ex. B at 2. Li submitted an administrative appeal on Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings ("Form N-336 Proceeding") on March 25, 2010. *Id.* ¶ 31; *id.* Ex. C. Li again argued that the February 13, 1997 priority date should apply in her case, and thus the priority date for both F2A and F2B classifications was current at the time her father filed the Form I-130 Petition. *Id.* Ex. A at 1. USCIS vacated but reaffirmed its denial of Li's Form N-400 determination. *Id.* ¶¶ 4, 32; *id.* Ex. A at 1.

Li filed the Complaint on December 10, 2021. Dkt. No. 1. The Complaint brings causes of action (1) for violation of the INA and seek a *de novo* hearing of Li's naturalization application under 8 U.S.C. § 1421(c), *id.* ¶¶ 73–75; and (2) for violation of the APA, 5 U.S.C. § 706(2). *Id.* On March 14, 2022, Defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Li's INA claim for failure to state a claim and moved, pursuant to

Federal Rule of Civil Procedure 12(b)(1), to dismiss Li's APA claim for lack of subject matter jurisdiction.  Dkt. No. 13.  Plaintiff filed a memorandum of law in opposition to the motion on May 18, 2022.  Dkt. No. 18.  Defendants submitted a reply on June 2, 2022.  Dkt. No. 19.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'"  *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of [its] own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."  *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

### I.   Motion to Dismiss Under Rule 12(b)(6)

Section 1421(c) of Title 8 provides that a "person whose application for naturalization . . . is denied, after a hearing before an immigration officer under [8 U.S.C. § 1447(a)], may seek review of such denial before the United States district court for the district in which such person resides."  The Court is required "to review the denial of naturalization 'de novo,' to 'make its own findings of fact and conclusions of law,' and 'at the request of the petitioner, [to] conduct a hearing de novo on the application.'"  *Chan v. Gantner*, 464 F.3d 289, 295 (2d Cir. 2006).  "The applicant bears the burden of establishing that he is entitled to naturalization" and "must affirmatively show that he has met all statutory requirements for becoming a naturalized citizen."

*Rivera v. U.S. Citizenship & Immigr. Servs.*, 5 F. Supp. 3d 439, 442 (S.D.N.Y. 2014) (internal citation omitted).

The Federal Rules of Civil Procedure "apply to proceedings for admission to citizenship." *See* Fed. R. Civ. P. 81(a)(3).  Thus, "a court need not conduct an evidentiary hearing where, as here, there are no disputed issues of material fact." *Del Orbe v. Holder*, 2012 WL 3826182, at *2 (S.D.N.Y. Aug. 27, 2012) (citing *Chan*, 464 F.3d at 295) (finding that motion for judgment on the pleadings, which "is governed by the same standard as a motion to dismiss under Rule 12(b)(6)," was appropriate procedural process); *see also Shtykova v. Holder*, 2012 WL 1004906, at *4 (E.D.N.Y. Mar. 22, 2012) (disposing of 8 U.S.C. § 1421(c) proceeding on motion to dismiss because the "undisputed facts" established plaintiff was not entitled to citizenship).

Defendants argue that as a matter of law Li is not entitled to citizenship under 8 U.S.C. § 1429 because she was not lawfully admitted for permanent residence at the time of her application.  Dkt. No. 13 at 13.  Specifically, Defendants argue that, based on the interpretation of the CPSA adopted by USCIS in *Matter of Wang* and approved by the United States Supreme Court in *Scialabba*, Li is entitled to the priority date only of the Form I-130 Petition filed by her father on her behalf and not of the Form I-130 Petition of which she was a derivative beneficiary until she turned age twenty-one.  Defendants contend that Li was thus admitted to the United States in November 2010 on a government error and not entitled to citizenship as a result.  *Id.* 13–17.  For her part, Li contends that the priority date on her Form I-130 Petition was correct and that she was lawfully admitted to the United States.  Dkt. No. 18 at 10–11.  She argues that *Matter of Wang* was not decided until nine months after USCIS received the Form I-130 Petition filed by Li's father and that the rule annunciated in *Matter of Wang* should not be applied

retroactively.  *Id.* at 10.  Finally, Li argues that she will be "irreparably harmed and prejudiced" if her naturalization application is not approved.

The only issue before this Court with respect to Li's naturalization application is whether Li was "lawfully admitted for permanent residence" on November 2, 2010 and thus met the five-year continuous-residency requirement to be considered for citizenship.  *See* Dkt. No. 13 at 13–16.  In turn, this question hinges on whether Li was eligible for LPR status in 2010 after the BIA's decision in *Matter of Wang*.  The Court finds that *Matter of Wang* applies to Li's Form I-130 Petition and thus Li was ineligible to become a legal permanent resident.

### A.      Legal Permanent Resident Status

The Immigration and Naturalization Act ("INA") provides that "[n]o person . . . shall be naturalized unless such applicant," *inter alia*, (i) was lawfully admitted for permanent residence to the United States for at least five years preceding the filing of the application for naturalization; (ii) has resided continuously in the United States from the date of application until the date of admission to citizenship; and (iii) during this timeframe, "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."  8 U.S.C. § 1427(a); *see also* 8 C.F.R. § 316.2(a).  "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship."  *Alzokari v. Pompeo*, 973 F.3d 65, 72 (2d Cir. 2020) (quoting *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (internal quotation marks omitted).  The applicant bears "the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization."  8 C.F.R. § 316.2(b); *see also* 8 U.S.C. § 1429(a).  Specifically, the applicant must establish that she was "lawfully admitted as a permanent resident to the United States, in accordance with the

immigration laws in effect at the time of the applicant's initial entry or any subsequent reentry." 8 C.F.R. § 316.2(a).

"The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101. The BIA has held that "'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity." *In Re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003). Thus, "aliens who had obtained their permanent resident status by fraud, or had otherwise not been entitled to it . . . [are] deemed, *ab initio*, never to have obtained lawful permanent resident status once [their] original ineligibility therefor is determined in proceedings." *Id.* at 550–51. The Second Circuit has upheld and follows the BIA's interpretation of 8 U.S.C. § 1101. *De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554 (2d Cir. 2007) ("[We] hold that to be 'lawfully admitted for permanent residence' an alien must have complied with the substantive legal requirements in place at the time she was admitted for permanent residence.").

Although *In Re Koloamatangi* involved a situation where LPR status was obtained through fraud, the Second Circuit has since indicated that the holding applies to those who obtain LPR status through government mistake.[5]  In *De La Rosa*, the Second Circuit reasoned that "'lawful' connotes more than just procedural regularity; it suggests that the substance of an action complied with the governing law." *Id.* at 554. The Second Circuit thus held that "[w]hile Koloamatangi had acquired his status by fraud, the decision explicitly addressed situations where the alien 'had otherwise not been entitled to [lawful permanent residence].'" *Id.*  The relevant

---

[5] This approach is consistent with that taken in other circuits. *See Daniel v. Dist. Dir.*, 2015 WL 1097375, at *9 (S.D.N.Y. Mar. 12, 2015) (collecting cases).

factor in the analysis, the court indicated, was whether the individual had "complied with the substantive legal requirements in place at the time she was admitted for permanent residence," not the intent behind the noncompliance. *Id.* at 555. The Second Circuit later interpreted this holding as follows: "[E]ven for those who obtained their LPR status by mistake rather than fraud, if petitioner fails to demonstrate that he or she had complied with the relevant substantive legal requirements at the time petitioner was admitted for permanent residence, then petitioner was never 'lawfully admitted for permanent residence.'" *Villafana v. Holder*, 358 F. App'x 245, 246 (2d Cir. 2009). Courts in this Circuit have applied the Second Circuit's holding in 8 U.S.C. § 1421(c) proceedings where applicants for naturalization had obtained LPR status through government mistake. *See Daniel*, 2015 WL 1097375, at *10 (concluding that obtaining LPR status due to USCIS mistake did not entitle petitioner to citizenship because "the law is clear that an individual is ineligible for naturalization where she successfully but unlawfully adjusted to LPR status"); *Shtykova*, 2012 WL 1004906, at *4 (same).

Li and Defendants center their argument on whether *Matter of Wang* should be applied retroactively to Li's Form I-130 Petition. Defendants argue that "interpretations of statutes, unlike statutes themselves, are typically given retroactive effect" and thus *Matter of Wang* should apply retroactively to Li's Form I-130 Petition. Dkt. No. 13 at 15. For her part, Li relies on the presumption against the retroactive effect of new congressional statutes or regulations. Dkt. No. 18 at 8–9.

*Matter of Wang* had not been decided when Li's father filed the Form I-130 Petition on her behalf. At that time, the only BIA guidance on whether a derivative beneficiary could inherit a priority date on a subsequent application was *Matter of Garcia*. This decision was not binding on USCIS. *See Rotimi v. Gonzales*, 473 F.3d 55, 57 (2d Cir. 2007) ("[T]here is no indication that

the BIA's nonprecedential single-member decision was 'promulgated' under its authority to 'make rules carrying the force of law . . .'"); *see also* 8 C.F.R. § 1003.1(g)(1) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, [precedent] decisions of the Board . . . are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States.").  But until *Matter of Wang* was decided, USCIS was free to apply the rule developed in *Matter of Garcia*, as it apparently did in Li's case.  In fact, both the plurality and concurrence in *Scialabba* suggested that *Matter of Garcia* was a reasonable interpretation of § 1153(h)(3).  *See supra* pp. 5–8.  Li's father thus was not in error when in September 2008 (before *Matter of Wang* was decided) he filed a new Form I-130 petition seeking to classify Li as F2B (an unmarried child of a permanent resident over the age of twenty-one) and requesting the February 13, 1997 priority from the original Form I-130 Petition, nor was USCIS in error in accepting it with that date.  USCIS would not have been in error had it granted Li a visa when it received the Form I-130 Petition at the end of September 2008, had a visa been available.  The question presented thus is whether the BIA acted unlawfully in applying *Matter of Wang*—a case decided after the Form I-130 Petition was filed and accepted—based on the fact that *Matter of Garcia* was no longer good law at the time Li applied for naturalization.

The Second Circuit has held that agencies, such as USCIS, "exercise both quasi-legislative and quasi-judicial powers."  *Marquez v. Garland*, 13 F.4th 108, 111 (2d Cir. 2021).  In the removal-proceeding context, the Second Circuit has held that "new rules, unlike new legal interpretations, are not automatically given retroactive effect," *id.* at 112, and that "the retroactive application of the resulting rules 'must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles,'" *Obeya v.*

18

*Sessions*, 884 F.3d 442, 445 (2d Cir. 2018) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947)).  The Second Circuit has adopted the *Retail, Wholesale* test to determine whether an adjudicatory rule partakes of the quality of adjudication and should be given retroactive effect or whether it partakes of the quality of legislation and should be limited to future conduct. *Marquez*, 13 F.4th at 112; *see New York Tel. Co. v. F.C.C.*, 631 F.2d 1059, 1068 (2d Cir. 1980) (adopting test from *Retail, Wholesale and Department Store Union v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972) to determine the permissibility of "the retroactive application of a change in administrative policy"); *Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015) (adopting the *Retail, Wholesale* test for rules announced in BIA removal-proceeding adjudications).[6]  When making this determination, a court should examine five factors:

> (1) whether the case is one of first impression, (2) whether the new rule presents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order places on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Marquez*, 13 F.4th at 112 (quoting *Lugo*, 783 F.3d at 121).[7]  "Like most such unweighted multi-factor lists, this one serves best as a heuristic; no one consideration trumps the others."

---

[6] Although the Second Circuit has not yet used the *Retail, Wholesale* test in the context of removal proceedings, the Court sees no reason why a rule used in "this circuit" to "determine[e] whether to give retroactive effect to an agency decision," *N.L.R.B. v. Oakes Mach. Corp.*, 897 F.2d 84, 90 (2d Cir. 1990), would not also apply in other immigration contexts where, as here, the BIA has similarly adopted a new rule through adjudication.

[7] The *Retail, Wholesale* test was developed without Justice Stevens' guidance in *Landgraf*.  But the test incorporates the core of the retrospectivity analysis articulated in his opinion:

> The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event . . . .  [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Velasquez-Garcia v. Holder*, 760 F.3d 571, 581 (7th Cir. 2014).  In practice, however, the test frequently turns on an analysis as to whether the petitioner—by virtue of her action or her reasonable reliance on a well-established administrative practice—has acquired an interest in the application of that pre-existing rule or practice sufficient to overcome any statutory interest in applying the new rule retroactively.  With the test so understood, Li is not entitled to have USCIS apply the 1997 priority date from her aunt's Form I-130 Petition in considering whether she was entitled to a visa in May 2010 (after *Matter of Wang* was decided) and thus entitled to be considered for citizenship as of the time of her application in April of 2019.

"[T]he most significant factors are the second and third factors."  *Marquez*, 13 F.4th at 112.  Starting with the third  factor, Li does not articulate any manner in which she could have reasonably relied on the law as it was understood in *Matter of Garcia*.  *See Obeya*, 884 F.3d at 448 ("[T]he critical question [for the third factor] is not whether a party actually relied on the old law, but whether such reliance would have been reasonable." (internal quotation marks and citation omitted)).  Li argues that she "justifiably relied upon the visa for purposes of entering the United States and thereafter, when obtaining her green card status."  Dkt. No. 18 at 9.  Li could not reasonably have relied upon the 1997 priority date in her decision to enter the United States. Li was admitted to the United States in November 2010.  By that time, any ambiguity about how 8 U.S.C § 1153(h)(3) applied to the priority dates of aged-out derivative beneficiaries had been

---

*Landgraf*, 511 U.S. 244, 270 (1994).  The *Retail, Wholesale* test is often characterized as a test used to determine whether "an agency decision may permissibly be applied retroactively."  *See, e.g.*, *Lugo*, 783 F.3d 119.  Although functionally correct, the more accurate characterization may come from the Second Circuit's recent decision in *Marquez*:  the test "distinguishes prospective rules from retroactive decisions."  13 F.4th at 112.  That is, under the *Landgraf* framework, this test determines whether a newly enunciated rule has retroactive effect, and thus whether it can be applied to conduct that occurred in the past.

settled and Li's visa was issued in error;[8] the BIA had decided *Matter of Wang* in a precedential

opinion and that decision was "binding on all officers and employees of [the Department of

Homeland Security] or immigration judges in the administration of the immigration laws of the

United States."  8 C.F.R. § 1003.1(g)(1).  Thus, Li could not have reasonably relied on her

priority date—which was at that point clearly erroneous—when she decided to immigrate to the

United States in 2010.  *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 522 (9th Cir. 2012)

(refusing to find actions taken in reliance on an earlier court-enunciated rule reasonable after

BIA issued contrary decision).[9]

    The Complaint is also devoid of any allegations that Li or her father relied on the

February 1997 priority date, either in filing the Form I-130 Petition in September 2008 or during

the period from when that Form I-130 Petition was filed until July 2009, when *Matter of Wang*

was decided, thus favoring retroactivity.  *See N.L.R.B. v. Niagara Mach. & Tool Works*, 746 F.2d

---

[8] Perhaps for this reason, Li attempts to argue that "the policy of USCIS to then enable individuals who found themselves in the same situation as the Plaintiff, to be classified in a manner that would permit them to retain a priority date for purposes of obtaining a Green Card without further delay" was still in effect "on November 2, 2010" when Li entered the United States.  Dkt. No. 18 at 9.  But Li presents no evidence that the BIA's precedential opinion in *Matter of Wang* was not the sole "policy" in effect when she received her visa.  Li's attempts to reframe the relevant decision from *Matter of Wang* to the Supreme Court's decision in *Scialabba*, after she received LPR status, also fall short.  *See* Dkt. No. 18 at 10–11 (*Scialabba* "should likewise not be binding upon Plaintiff, as such judicial decision was issued some four years after USCIS approved Plaintiff's father's I-130 Petition in 2010 and some four years after Plaintiff was issued a visa . . . .").  The Supreme Court did not enunciate a new rule in *Scialabba*; it merely, upheld "the Board's determination," which had been in effect since 2009.  573 U.S. at 46.

[9] *Garfias-Rodriguez* left open the question of whether the Ninth Circuit's earlier decision would continue to be applied in the petitioner's case.  *See* 702 F.3d at 507 ("[W]e must [first] decide whether to defer to the agency's interpretation of the INA and overrule" our earlier decision.).  The Ninth Circuit still found any reliance on its earlier rule unreasonable because the petitioner "was on notice of [the earlier decision's] vulnerability."  *Id.* at 522.  Here, there is no question that *Matter of Wang* overturned the BIA's earlier, non-precedential decision and thus there is no question that Li's reliance on the priority date *after Matter of Wang* was issued was unreasonable.

143, 151 (2d Cir. 1984) (applying rule retroactively because the record was "devoid of evidence of reliance," which weighed against plaintiff); *see also Garfias-Rodriguez*, 702 F.3d at 522 (applying rule retroactively because petitioner took no action during 21-month period before BIA issued decision contrary to Ninth Circuit's, the only "window in which [Petitioner's] reliance interest based on our previous rule might have been reasonable"). *Cf. Zhi Geng Li v. Holder*, 388 F. App'x 45, 48 (2d Cir. 2010) ("[T]his Circuit's precedent requires an immigration petitioner claiming impermissible retroactivity [of a statute] to demonstrate individualized, subjective reliance upon prior law, except in circumstances where 'the record contain[s] sufficient objective evidence that aliens who engaged in a course of action like [the petitioner's] 'almost certainly' relied reasonably on the continued availability of . . . relief.'" (quoting *Wilson v. Gonzales*, 471 F.3d 111, 122 (2d Cir. 2006)).  Li's father filed the Form I-130 petition on her behalf near the earliest possible date he could have.  A visa became available for him in June 2008.  Compl. ¶ 18.  Li's father did not forestall submitting a Form I-130 Petition, and thus securing an earlier priority date for his daughter, based on a mistaken understanding that the new petition would carry the priority date associated with the earlier petition.

There is also no argument that Li could have reasonably relied on the earlier priority date during the same interval.  During the period before *Matter of Wang* was decided, the original priority date, February 13, 1997, had not yet become current.  *See id*. ¶¶ 19, 49, 69.  Li thus had no legal right to a visa; in fact, the availability of a visa—and her approval for a visa if one became available—was still very much uncertain.  "The filing or approval of [a Form I-130 P]etition does not give [the beneficiary] any immigration status or benefit."  USCIS, https://www.uscis.gov/i-130 (last updated Aug. 1, 2022).  Rather, the Form I-130 gives the beneficiary a place in the visa line.  *Scialabba*, 573 U.S. at 47–48; *Li*, 654 F.3d at 378 ("USCIS's

approval of a petition does not automatically cause the agency to issue a visa or grant permanent lawful resident status to the beneficiary; instead, the beneficiary receives a place in line to wait for a visa."); *Bolvito v. Mukasey*, 527 F.3d 428, 431 n.4 (5th Cir. 2008) ("[T]he approval of Form I-130 results in the beneficiary of the petition being classified as an immediate relative for purposes of issuing a visa for admission to the United States; it does not grant a visa or permanent resident status." (internal quotation marks and citation omitted)).  When a visa becomes available, the beneficiary must go through a separate application process.  *See* 8 U.S.C. § 1202.  Only then will the individual be admitted to the United States as a legal permanent resident.  *See Scialabba*, 573 U.S. at 49–50 ("When, but only when, an alien with an immigrant visa is approved at the border does she finally become an LPR.").  Thus, the fact that Li may have believed that she had a priority date of 1997 until July 2009 cannot secure for her any benefit in terms of her priority to be naturalized.  Were the law otherwise, USCIS could never correct for a priority date granted in error based on the current understanding of the law.  *Matter of Wang* would have prospective effect only and as a matter of law.  A beneficiary would be able to have secured the earlier priority date simply by the fact that the petition was filed before *Matter of Wang* was decided, regardless when the beneficiary is considered for naturalization or whether the beneficiary took any action based on that now outdated understanding of the law.  In the words of Justice Kagan, the non-citizen who was originally the derivative beneficiary of a no longer qualifying relationship, would be able to "jump over thousands of others in the F2B line who had a qualifying relationship with an LPR for a far longer time."  *Id.* at 74.

Indeed, a beneficiary's spot in line is not fixed, undermining any reasonable reliance in connection with the naturalization process.  If circumstances surrounding the Form I-130 Petition change, then so too can the beneficiary's eligibility for a visa.  8 C.F.R. § 205.1, for example,

lists a number of situations, including the death of the petitioner and legal termination of a marriage to an LPR, where an approved Form I-130 Petition can be automatically revoked.  *See id.* § 205.1(C), (D).  8 C.F.R. § 204.2(i) lists circumstances under which a beneficiary's family-preference categorization is automatically converted to a new preference category (with different wait times) upon the occurrence of certain events, including after a beneficiary turns twenty-one.  *See id.* § 204.2(i)(2).  And the speed of this line can "slow, stop, or even retrogress."  USCIS, "Visa Retrogression," https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression (last updated March 8, 2018); *see also Velasquez-Garcia*, 760 F.3d at 575 (identifying an instance of visa retrogression for a Form I-130 Petition beneficiary).  Even after a beneficiary's priority date becomes current and a visa is ostensibly available, the beneficiary may lose her spot at the front of the line and have to wait longer to attain LPR status.  *See* USCIS, "Visa Retrogression" ("Sometimes a priority date that meets the cut-off date one month will not meet the cut-off date the next month.").  Li thus has not demonstrated reasonable reliance on the rule followed in *Matter of Garcia*.

The second factor—whether a new rule presents an abrupt departure from well-established practice—is generally linked to the second; it informs the reasonableness of a plaintiff's reliance.  "In short, 'the longer and more consistently an agency has followed one view of the law, the more likely it is that private parties have reasonably relied to their detriment on that view.'"  *Velasquez-Garcia*, 760 F.3d at 582 (quoting *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1082-1083 (D.C. Cir. 1987)); *see also Obeya*, 884 F.3d at 448 (Petitioner's "reliance on that precedent—the third *Lugo* factor—follows naturally from our determination that the BIA abandoned a decades-old rule . . . .").  Where there has been no reliance, it is not clear what weight if any this factor should be given.  In any event, there was no

well-established USCIS practice before *Matter of Wang* upon which Li could have reasonably relied.

Before *Matter of Wang*, there was a single unpublished opinion addressing the application of the CSPA to the priority date of aged-out derivative beneficiaries.  *See Matter of Garcia*, 2006 WL 2183654 (BIA 2006).  As described above, *Matter of Garcia* found that an aged-out derivative beneficiary could inherit her mother's priority.  *Id.* at *1.  But this non-precedential decision, issued only three years before *Mater of Wang*, did not align with then-existing regulations and was inconsistently applied.  8 C.F.R § 204.2(a)(4) (2007) provided that aged-out F2 derivative beneficiaries could only retain a primary beneficiary's priority date if the subsequent Form I-130 Petition was filed by the same individual as the original petition.  The government argued in *Matter of Wang* that the CSPA "essentially codifies [this] 'established regulatory practice,' which requires that the original priority date will be retained only if the second visa petition is filed by the same petitioner."  *Matter of Wang*, 25 I. & N. Dec. at 34.  The BIA accepted this argument and relied in part on this regulatory backdrop when it found that the priority date retention provisions of 8 U.S.C. § 1153(h)(3) did not apply to Form I-130 Petitions filed by a second petitioner.[10]  *Id.* at 35, 39 ("[T]he concept of 'retention' of priority dates has always been limited to visa petitions filed by the same family member.  A visa petition filed by another family member receives its own priority date.  We therefore presume that Congress enacted the language in section 203(h)(3) with an understanding of the past usage of these regulatory terms."); *see also Li*, 654 F.3d at 380.

---

[10] The BIA faulted the *Matter of Garcia* decision for not "discuss[ing] the legislative framework of the statute."  25 I. & N. Dec. at 33 n.7.

Nor was this priority-date rule consistently applied.  Both before and after *Matter of Garcia* was decided, there are several documented instances where USCIS refused to let derivative beneficiaries inherit a primary beneficiary's priority date.  *See*, *e.g.*, *Li*, 654 F.3d at 379 ("USCIS approved Feimei Li's 2008 petition on August 7, 2008.  However, USCIS established the priority date as April 25, 2008, rather than the 1994 date requested by Feimei Li."); *Co v. U.S. Citizenship & Immigr. Serv.*, 2010 WL 1742538, at *1 (D. Or. Apr. 23, 2010) (describing how USCIS gave 2008 Form I-130 Petition of aged-out derivative beneficiary a priority date of May 7, 2008, instead of father's original priority date); *Costelo v. Chertoff*, 258 F.R.D. 600, 610 (C.D. Cal. 2009) (certifying class of aged-out derivative beneficiaries who were "not granted automatic conversion or the retention of priority dates pursuant to § 203(h)(3)" after initial motion for class certification in July 2008 was denied pending the BIA's decision in *Matter of Wang*); *Zhang v. Napolitano*, 663 F. Supp. 2d 913, 917–18 (C.D. Cal. 2009) (subsequent history omitted) (involving several aged-out derivative beneficiaries who did not inherit primary beneficiary's priority date).  Li acknowledges the inconsistency with which the rule announced in *Matter of Garcia* was applied: "it was the practice of the USCIS prior to the Decision in [Matter of] Wang, to *sometimes* make automatic conversions from one preference category to another, where the old priority date is kept."  Dkt. No. 18 at 12 (emphasis added). This is not a situation, like in *Obeya*, where a new regulatory interpretation represented an "abrupt departure from well-established practice."  *See Obeya*, 884 F.3d at 448–49 (concluding that a new BIA rule that departed from "decades" of practice, supported by BIA and Second Circuit precedent, represented a "clear departure from longstanding BIA precedent").  Rather, *Matter of Wang* departed from a recent contrary decision that was, as Li acknowledges, inconsistently applied.  *Matter of Wang*  attempted to fill a void in an unsettled area of law.

The Second Circuit previously has found that the fourth factor weighs against retroactivity in cases where the petitioner is faced with "'removal from the United States, [which has] with life-changing consequences,' . . . a 'massive' burden for any immigrant." *Obeya*, 884 F.3d at 445 (quoting *Lugo*, 783 F.3d at 121).  In cases where a non-citizen faces removal, the non-citizen has made a decision of immense importance based upon her understanding of pre-existing law:  She has uprooted herself and perhaps her family from her homeland and established a new life in a new community and a new country.  The non-citizen has an interest in that decision being respected; she has made contributions to her new country and taken actions on the basis of the law as it was previously understood.  The USCIS's decision not to accord Li the 1997 priority date associated with her aunt's Form I-130 Petition will have no such consequences.[11]  The question in this case is whether Li will succeed in her current attempts to gain citizenship.  And "[t]he opportunity to become a citizen of the United States is said to be merely a privilege, and not a right." *Tutun v. United States*, 270 U.S. 568, 578 (1926).  Even if the potential burden that Li faces can be reframed as "the prospect of being placed in immigration removal, having her Green Card of 12 years revoked and her being ordered removed from this country," Dkt. No. 18 at 13, "there is a clear difference between facing possible deportation and facing certain deportation." *I.N.S. v. St. Cyr*, 533 U.S. 289, 291 (2001).

Finally, the last factor—the statutory interest in applying the rule retroactively—also weighs against Li.  This factor generally "points in favor of the government because non-retroactivity impairs the uniformity of a statutory scheme, and the importance of uniformity in

---

[11] During oral argument, Defendants represented that Li's Green Card was *not* in jeopardy and would *not* be put in jeopardy as a result of these proceedings or this decision.  Further, it is another question, though not one currently before this Court, whether USCIS should exercise its equitable powers to date Li's LPR status to the date on which she would have become eligible for a visa had USCIS error not caused her to inherit her father's priority date.

immigration law is well established." *Garfias-Rodriguez*, 702 F.3d at 523.  *But see Obeya*, 884 F.3d at 449 (concluding that the "uniformity" rationale may be diminished, or even non-existent, when "the immigration consequences of a conviction" are in question).  The purpose of the CSPA—to protect against "bureaucratic delay" in the visa process, not "the months or, more likely, years the alien spends simply waiting for a visa to become available," *Scialabba*, 573 U.S. at 53—also favors retroactive application of *Matter of Wang*.  Li aged out of her derivative beneficiary status because a visa became available to her father after she turned twenty-one.  *See* Compl. ¶ 18.  Permitting Li to inherit her father's priority date would insulate Li solely from the consequences of waiting in line for a family-preference visa, which the CSPA was not designed to protect.  And it would undermine the systemic interests that Justice Kagan highlighted in her plurality opinion:  The BIA's interpretation preserves the "immigration law's basic first-come-first-served rule" by ensuring that those without a qualifying relationship to an LPR at the time they age out do not get visa priority over those who have had a qualifying relationship to an LPR for much longer.  *See Scialabba*, 573 U.S. at 74.  Finally, Li's unreasonable reliance on pre-*Matter of Wang* practice leaves nothing left to balance:  Because Li "has not demonstrated reliance on an established rule, no interest counterbalances that of the government, and the fifth Lugo factor favors the retroactive application" of *Matter of Wang*.  *Marquez*, 13 F.4th at 114.

The only factor that points in favor of nonretroactivity is the first.  This case is not one of first impression.  "First impression," as used by the *Retail, Wholesale* court, "differs from the more typical understanding of the term as referring to situations in which an agency confronts an issue that it has not resolved before."  *Clark-Cowlitz*, 826 F.2d at 1082 n.6.  "[T]he first factor points in favor of retroactive application of a rule in the adjudication in which the new rule or principle is announced."  *Id.*; *see Velasquez-Garcia*, 760 F.3d at 581 ("[A] rule is more likely to

apply 'retroactively' in the case where it is first announced (that is, to the parties involved in that case) than in later cases in which it might apply to conduct of others that took place before its announcement.").  The parties to the adjudicatory proceeding where a new rule is announced took a risk of challenging the agency practice; those parties should thus reap the benefits, or suffer the consequences, of the agency announcing a new rule.  *See Velasquez-Garcia*, 760 F.3d at 581.  Here, *Matter of Wang* was the case of first impression, not Li's; whether or not a derivative beneficiary could inherit the primary beneficiary's priority date after she ages out of a preference category was settled by the BIA's annunciation of its new priority-date rule in that case.

But this factor alone cannot give Li a protectible interest in having the 1997 priority date respected.  Li has not demonstrated that she reasonably relied on the 1997 priority date or that the burden here—not being afforded the privilege of U.S. citizenship—"would work a manifest injustice," *Velasquez-Garcia*, 760 F.3d at 584, on her.  Application of this rule to Li will no doubt cause hardship and pain.  But, at least in the absence of any cognizable prejudice, this Court is obligated to conclude that *Matter of Wang* applies retroactively in this case, that Li was admitted to this country on a government mistake, and thus that Li is not a lawful permanent resident.

Because Li had not been a lawful permanent resident for five years when she filed her N-400 application, she is not in compliance with the prerequisites for citizenship and is thus ineligible as a matter of law for naturalization.  *See Daniel*, 2015 WL 1097375, at *9.

### B.    Equitable Relief Is Unavailable

Li argues that "given the exceptional nature of the facts, fundamental fairness dictates that Plaintiff should not be subjected to such a harsh fate [of potential deportation] and justice requires [Li] be granted the right to naturalize to that of a US citizen."  Dkt. No. 18 at 13.

Defendants respond that it is not within the scope of this Court's equity powers to award citizenship.  Dkt. No. 19 at 4.

"[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers."  *I.N.S. v. Pangilinan*, 486 U.S. 875, 884 (1988).  Rather, "[o]nce it has been determined that a person does not qualify for citizenship, . . . the district court has no discretion to ignore the defect and grant citizenship."  *Fedorenko*, 449 U.S. at 517; *see also Hizam v. Kerry*, 747 F.3d 102, 111 (2d Cir. 2014) ("Well-settled case law bars a court from exercising its equity powers to naturalize citizens," even when the equities "overwhelmingly" favor the plaintiff).  As discussed, *supra* Section I.A, Li does not meet the statutory requirements for naturalization because, at the time she was admitted to the United States, she was not eligible for LPR status.  Thus, "equitable relief is not available to Plaintiff[]."  *Keane v. Velarde*, 2022 WL 3577841, at *9 (S.D.N.Y. Aug. 19, 2022).

## II.  Motion to Dismiss Under Rule 12(b)(1)

Li claims that USCIS's decisions denying her N-400 applications violated the APA because they were "arbitrary, capricious and evidenced an abuse of discretion."  Compl. ¶¶ 76–88.  Defendants argue that an APA claim is foreclosed because Plaintiff has an "adequate remedy" through 8 U.S.C. § 1421(c).  Dkt. No. 13 at 18.  Defendants also argue that, because Li did not respond to Defendants' APA argument, the Court should consider Li's APA claim abandoned.  Dkt. No. 19 at 5.

The APA permits judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C § 704.  "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  Here, 8 U.S.C. § 1421(c) provides *de novo* judicial

review of the denial of a naturalization application.  This review is "in accordance with chapter 7 of title 5" of the APA, making "the full scope of APA review available in a § 1421(c) action." *Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 436 F. Supp. 3d 170, 180 (D.D.C. 2019), *aff'd sub nom. Miriyeva v. United States Citizenship & Immigr. Servs.*, 9 F.4th 935 (D.C. Cir. 2021) (citing *De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 186–87 (S.D.N.Y. 2019), *aff'd*, 975 F.3d 120 (2d Cir. 2020)); *see also Escaler*, 582 F.3d at 291 n.1 ("Nor have we been informed as to what judicial relief the APA might authorize that adds to the sweeping de novo review provided by Section 1421(c).").  Because "there is another 'adequate remedy' through the review process explicitly granted by the INA," *De Dandrade*, 367 F. Supp. 3d  at 187, this Court thus lacks subject matter jurisdiction to adjudicate Li's APA claim.  *See also Kaibanda v. United States Citizenship & Immigr. Serv.*, 2022 WL 2195345, at *8 n.8 (S.D.N.Y. June 17, 2022).

Even if Plaintiff could raise an APA claim in this case, "[f]ederal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 584 n.12 (S.D.N.Y. 2021) (quoting *Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017)).  Because Li failed to address Defendants' arguments for dismissing the APA claim, the Court deems Li's APA claim abandoned.

## CONCLUSION

The Defendants' motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 12.


SO ORDERED.

Dated: November 21, 2022
      New York, New York                         LEWIS J. LIMAN
                                       United States District Judge